UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER KERR, | 1:16-cv-01797-LJO-SAB |
| Plaintiff, | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (Doc.11) AND DISMISSING DEFENDANTS' MOTION TO DISMISS (Doc. 7) |
| v. | |
| DELAWARE NORTH COMPANIES, INC., *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

Before the Court is Plaintiff's motion to remand this case to California Superior Court, filed on December 27, 2016. Doc. 11. On January 13, 2017, Defendants Delaware North Companies, Inc., DNC Parks & Resorts at Yosemite, Inc., and Delaware North Companies Parks and Resorts, Inc. (collectively "DNC"), filed a response. Doc. 14. Plaintiff filed a reply on January 23, 2017. Doc. 15. For the following reasons, the Court GRANTS Plaintiff's motion to remand.[1]

## II. BACKGROUND

Plaintiff was employed by DNC as a General Manager at Tuolumne Meadows Lodge in Yosemite National Park. Doc. 1-1 at 7. She allegedly suffered from workplace sexual harassment, battery, and assault during her employment. Doc. 11 at 3. On May 20, 2016, Plaintiff filed a complaint in California Superior Court. Doc. 1-1 at 3. DNC was served with the complaint on September 13,

---

[1] On January 5, 2016, DNC filed a motion to dismiss. Doc. 7. Since this matter is remanded to California Superior Court, the motion is moot.

1

2016. Doc. 1-1 at 2. On October 13, 2016, DNC filed a demurrer to Plaintiff's complaint, contending that the Superior Court lacked subject matter jurisdiction because the claims occurred in the federal enclave of Yosemite National Park and because Plaintiff's claims were brought under state laws which did not apply within the Park. Doc. 1-2 at 4-8. Plaintiff filed an amended complaint on October 25, 2016. Doc. 1-4; Doc. 1-5 at 2. On November 28, 2016, DNC filed a notice of removal to this Court. Doc. 1.

### III. STANDARD OF DECISION

As a general matter, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The removing party bears the burden of showing that removal is proper, and there is a "strong presumption" against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removal statute is "strictly construed against federal court jurisdiction." *Durham v. Lockheed Martin Corp*, 445 F.3d 1247, 1253 (9th Cir. 2006). Any doubts as to the propriety of a removal are resolved in favor of remand. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

"The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). If a case is not removable based on the initial pleading, "a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). The thirty day time period for removal starts to run from the defendant's receipt of a pleading if that pleading "affirmatively reveals on its face" the facts necessary for federal court jurisdiction. *Harris v. Bankers Life & Cas. Co.*, 425

F.3d 689, 690-91 (9th Cir. 2005) (citations omitted). If there is no basis for removal evident within the "four corners" of a pleading, it is not removable and the 30 day time limit does not begin to run. *Id*. at 694. Any basis for removal, however, is sufficient to start the thirty day clock, and not all claims in a complaint need be removable to trigger the clock. *Durham*, 445 F.3d at 1253. The time provisions of § 1446(b) are strictly construed. *United States ex rel. Walker v. Gunn*, 511 F.2d 1024, 1027 (9th Cir. 1975). A case removed after the 30 day period may be remanded on procedural grounds upon a motion filed within 30 days of removal. 28 U.S.C. § 1447(c); *Kelton Arms Condo. Owners Assoc., Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003). "The presence or absence of federal question jurisdiction is governed by the 'well pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*, 215 F.3d 1005, 1014 (9th Cir. 2000).

## IV. ANALYSIS

**A.      The Federal Government Has Exclusive Jurisdiction Over Yosemite National Park**

The Federal Enclave Clause provides that

> The Congress Shall have power . . . To exercise exclusive legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

U.S. Const. art. I § 8, cl. 17. Except to the extent that Congress has otherwise provided, federal law applies on a federal enclave, and local law "not inconsistent with federal policy remain[s] in force until altered by national legislation." *Pacific Coast Dairy v. Dep't of Agric. of Cal.*, 318 U.S. 285, 294 (1943). "Exclusive legislation is consistent only with exclusive jurisdiction." *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930) (quotation marks omitted). "Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" *Durham*, 445 F.3d at 1250; *see Celli v.*

*Shoell*, 40 F.3d 324, 328 (10th Cir. 1994) (federal enclave jurisdiction is a form of federal question jurisdiction).

There is no dispute that Yosemite National Park is a federal enclave. Doc. 11 at 3; Doc. 14 at 2. By the June 2, 1920, act of Congress, the federal government accepted exclusive jurisdiction over "the territory embraced and included within the Yosemite National Park," subject to certain rights retained by the State of California.[2] 16 U.S.C. § 57; *Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518, 527 (1938). The federal government unquestionably has exclusive jurisdiction over Yosemite National Park.

**B.     Removal was Untimely**

Plaintiff argues that this case must be remanded to state court because DNC's notice of removal was filed outside of the mandatory removal period set forth in 28 U.S.C. § 1446(b) and was therefore untimely. Doc. 11 at 3-4. Plaintiff contends that her initial complaint set forth the facts required for federal jurisdiction under the federal enclave doctrine, and that the 30 day period for removal began when she served the complaint on September 13, 2016. *Id.* at 8.

Plaintiff filed her initial complaint on May 20, 2016, and DNC was served with the complaint on September 13, 2016, but did not file a notice of removal until November 28, 2016, well outside of the initial 30 day window. Removal could have been proper only if the initial pleading was ambiguous regarding the facts necessary for federal jurisdiction and the second removal window, described in 28 U.S.C. § 1446(b)(3), applied. Neither party argues that the initial complaint sets forth a basis for federal subject matter jurisdiction other than federal enclave jurisdiction. For removal to have been proper, therefore, Plaintiff's initial complaint must have been ambiguous as to whether federal enclave

---

[2] California retained "the right to serve civil or criminal process within the limits of [Yosemite National Park] in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed in [California] outside of [Yosemite National Park]", as well as the right to collect taxes, fix and collect fishing license fees in the park, and also secured the right of residents within the park to vote in the counties in which the park is located. 16 U.S.C. § 57.

4

jurisdiction existed, and DNC must not have been on notice from the complaint alone that grounds existed for removal to federal court. If the language of the initial pleading created ambiguity regarding whether conduct took place within a federal enclave, the 30 day period was tolled. *See Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1035 (10th Cir. 1994) (affirming district court ruling that the phrases "while working at" and "while working for" could refer either to the geographic location or the time during which relevant events took place, rendering the pleading ambiguous and tolling the removal period). If Plaintiff's initial complaint unambiguously stated a claim subject to federal jurisdiction, removal was untimely and the Court must remand this case.

Plaintiff argues that she alleged unambiguously that some or all of the events described in her initial complaint took place within Yosemite National Park, a federal enclave, and DNC was consequently on notice that federal jurisdiction was proper. Doc. 11 at 5-6. She contends that federal courts have federal question jurisdiction over tort claims which arise in federal enclaves. Doc. 11 at 6-7. DNC argues that Plaintiff's initial complaint was ambiguous as to the location at which the events took place, and could reasonably have been construed to refer to locations not unambiguously within the borders of Yosemite National Park. Doc. 14 at 6-8. Additionally, DNC argues that Plaintiff pled claims under California state laws, including California state laws which did not predate the cession of Yosemite National Park to the federal government, which did not establish grounds for removal. Doc. 14 at 5-6. While DNC does not explicitly state the premise, the implication of their argument is that federal enclave jurisdiction arises only if the complaint states a cause of action which is cognizable under federal law.

DNC's arguments miss the mark. Federal enclave doctrine permits federal courts to exercise jurisdiction over tort and personal injury claims that arise in federal enclaves. *Durham*, 445 F.3d at 1250; *Willis v. Craig*, 555 F.2d 724, 726 (9th Cir. 1977) (per curiam); *Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031, 1038 (N.D. Cal. 2012). Unlike a typical federal question jurisdiction case, where the pleadings are examined to determine whether a claim arises under federal law, that is, where federal

law creates the cause of action, *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986), federal enclave jurisdiction revolves around "the precise *location* of the events giving rise to the claims for relief." *Akin v. Big Three Indus., Inc.*, 851 F. Supp. 819, 824 (E.D. Tex. 1994), *aff'd sub nom. Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1035-36 (10th Cir. 1998). It "would be incongruous to hold that although the United States has exclusive sovereignty [over a federal enclave], its courts are without power to adjudicate controversies arising there." *Mater v. Holley*, 200 F.2d 123, 124 (5th Cir. 1952). Some tort claims may fail to state a cause of action that is legally cognizable under federal law. The merits of the underlying claim do not, however, determine whether a federal court has jurisdiction. Jurisdiction "is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [the plaintiff] could actually recover." *Bell v. Hood*, 327 U.S. 678, 683 (1946). "[T]he failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id*.

The Ninth Circuit has not defined the limits of federal enclave jurisdiction for the purpose of removal beyond the general statement that federal courts have jurisdiction over tort and personal injury claims arising in federal enclaves, perhaps because "28 U.S.C. § 1447(d) generally bars review of a district court order remanding a case to state court." *Durham*, 445 F.2d at 1250. District courts, however, have grappled with the issue. When reviewing challenges to removal where a federal enclave is the locus of an alleged personal injury or tort, federal courts have upheld jurisdiction without inquiring into the precise laws under which claims are made. *See Azhocar v. Coastal Marine Servs., Inc.*, No. 13-CV-155 BEN (DHB), 2013 WL 2177784, at *2-3 (S.D. Cal. May 20, 2013) (factual basis for removal was apparent from complaint asserting California wage and hour law violations arising out of plaintiffs' work at naval bases); *Bell v. Arvin Meritor, Inc.*, No. 12-00131-SC, 2012 WL 1110001, at *2 (N.D. Cal. Apr. 2, 2012) (plaintiffs' allegation of exposure to asbestos in the course of employment with the United States Army on various army bases established federal enclave jurisdiction); *Fung v. Abex Corp*, 816 F. Supp. 569, 571 (N.D. Cal. 1992) (plaintiffs' allegation of exposure to asbestos while

6

working on naval vessels docked at naval facilities established federal enclave jurisdiction).

Once jurisdiction is assumed, courts evaluate separately whether particular types of tort claims are available under the federal enclave doctrine, pursuant to which "preexisting state law not inconsistent with federal policy becomes federal law and remains in existence until altered by national legislation." *Snow v. Bechtel Const. Inc.*, 647 F. Supp. 1514, 1521 (C.D. Cal. 1986) (citing *Pacific Coast*, 318 U.S. at 294). For example, in *Cooper v. Southern California Edison Co.*, 170 Fed. App'x 496, 497-98 (9th Cir. 2006), the Ninth Circuit affirmed a district court's grant of summary judgment on claims for intentional and negligent infliction of emotional distress and retaliation, because those causes of action were first recognized under California law no earlier than the 1950s, well after the enclave in question (Camp Pendelton) was acquired by the United States in 1941. *See also Snow*, 647 F. Supp. at 1521 (granting summary judgment where wrongful termination claim relies on state law enacted after land became federal enclave).

*Olig v. Xanterra Parks and Resorts, Inc.*, No. CV 13-15-BLG-DLC-RKS, 2013 WL 3936904 (D. Mont. July 30, 2013), *adopted by* No. CV 13-15-BLG-DLC-RKS, 2013 WL 5234866 (D. Mont. Sept. 17, 2013), which involved factual circumstances similar to the present case, provides another helpful example. The plaintiff in *Olig* brought claims for wrongful discharge, intentional infliction of emotional distress, and punitive damages for actions which took place in Yellowstone National Park. 2013 WL 3936904 at *1. The court found that the plaintiff had pled sufficient facts to establish federal enclave jurisdiction, because the events pertinent to the claims took place in a federal enclave, and denied the plaintiff's motion to remand to state court. *Id*. at *3-5. The court then granted summary judgment on the defendant's behalf as neither Montana nor Wyoming had recognized torts of wrongful discharge or intentional infliction of emotional distress prior to the cessation of Yellowstone National Park to the federal government. *Id*. at *5-6. Based on the foregoing, the Court finds that federal jurisdiction was properly pled if Plaintiff's initial complaint alleged that the events pertinent to her claim took place in Yosemite National Park.

Plaintiff's initial complaint satisfies this standard. The complaint alleges DNC is "a commercial concessionaire operating in Yosemite National Park," Doc. 1-1 at ¶ 15; that Plaintiff was hired by DNC "in 2013 in Yosemite National Park," Doc. 1-1 at ¶ 16; and that Plaintiff was "acting as the general manager for DNC's Tuolumne Meadows Lodge in Yosemite National Park." Doc. 1-1 at ¶ 17. Plaintiff further alleges that "DNC employees working at the remote Tuolumne Meadows Lodge . . . live and work in an atypical environment. Employees are isolated in a small, isolated area surrounded by Yosemite wilderness." Doc. 1-1 at ¶ 17. Plaintiff's allegations of specific conduct included descriptions of DNC employees making "inappropriate statements to Plaintiff at work," leaving "sex toys and sexual images in public and private areas of the Tuolumne Meadows Lodge and the common areas of DNC employee housing" and "threats of physical violence against Plaintiff" which motivated Plaintiff to contact security who "spent several days in the DNC employee housing area." Doc. 1-1 at ¶ 18.

The harassment alleged by Plaintiff culminated in an incident at "a work party on DNC property hosted by DNC" where Plaintiff was "physically attacked," and drugged by DNC employees. Doc. 1-1 at ¶ 21. Plaintiff was then allegedly taken by DNC employees "to one of their DNC employee housing rooms" where Plaintiff was further assaulted. Doc. 1-1 at ¶ 22. Subsequent to this incident, Plaintiff was allegedly told that she could no longer continue as General Manager of Tuolumne Meadows Lodge and was offered an Assistant Manager position at "another facility within Yosemite National Park." Doc. 1-1 at ¶ 24.

DNC contends that Plaintiff's complaint is ambiguous regarding where certain of the events, specifically the "work party on DNC property" and the "DNC employee housing room[]" where Plaintiff alleges she was assaulted and battered. Doc. 14 at 6-8. DNC is correct that Plaintiff's initial complaint does not allege specifically that the work party occurred within Yosemite National Park or that all DNC employee housing was located within Yosemite National Park.[3] Plaintiff's initial

---

[3] In fact, Plaintiff does not allege specifically that any DNC employee housing was located within Yosemite National Park,

8

complaint, however, does make specific allegations that other conduct, including sexual harassment, took place at Tuolumne Meadows Lodge and that Tuolumne Meadows Lodge is located in Yosemite National Park.  Moreover, the locus of all the claims pertaining to DNC's employment practices, including failure to maintain an environment free of harassment, retaliation, constructive termination, and negligent hiring, training, and supervision, was Plaintiff's place of employment, Tuolumne Meadows Lodge.  *See Stiefel v. Bechtel Corp*, 497 F. Supp. 2d 1138, 1148 (S.D. Cal. 2007) (because the pertinent events to claims of wrongful termination, disability discrimination, retaliation, intentional infliction of emotional distress, and other labor code violations occurred on a federal enclave, the claims were subject to federal enclave jurisdiction even though the plaintiff was not on the enclave when he was fired).  Plaintiff's initial complaint unambiguously pled facts which support federal enclave jurisdiction, and DNC failed to remove the case within 30 days.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that this case was untimely removed and is REMANDED to California Superior Court.  DNC's motion to dismiss is DENIED as moot.

IT IS SO ORDERED.

Dated:   **March 3, 2017**              /s/ Lawrence J. O'Neill
                                        UNITED STATES CHIEF DISTRICT JUDGE

---

only that DNC employees at Tuolumne Meadows Lodge "live and work in an atypical environment," "[e]mployees are isolated in a small, isolated area surrounded by Yosemite wilderness," and "employees not only work together all day but also live together in the same DNC employee housing."  Doc. 1-1 at ¶ 17.